1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

**MICHAEL B. NORDLOFF,**

Petitioner,

v.

**K. ALLISON,**

Respondent.

Case No. **1:10-cv-02170 AWI MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

17

18    Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19    corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Yun Hwa Harper of

20    the office of the California Attorney General. The parties have not consented to

21    Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF No. 4, 10.)

22    **I.    PROCEDURAL BACKGROUND**

23    Petitioner is currently in the custody of the California Department of Corrections

24    pursuant to a judgment of the Superior Court of California, County of Humbolt, following

25    his conviction on November 17, 2004, of attempted burglary, vehicular theft, felon in

26    possession of a firearm, and various enhancements. (Answer, Ex. 1, ECF No. 30-1, p.

27    3.) Petitioner was given a determinate sentence of sixteen years. (Id.)

28

1

On February 8, 2006, guards witnessed a fight on the yard at California Substance Abuse Treatment Facility and State Prison, Corcoran, where Petitioner was housed. (See Answer, Exs. 2-3.) Officers broke up the fight between Petitioner and Inmate Moreno. At that time, the guards noticed that Inmate Moreno was bleeding, and an inmate manufactured weapon was on the ground. (Id.) The matter was referred to the Kings County District Attorney for prosecution. (Id.) On March 5, 2009, Respondent was notified by the district attorney's office that a decision had been made not to prosecute the matter. Respondent then initiated a disciplinary proceeding against Petitioner for battery on an inmate with a weapon. (Id.) On April 1, 2009, the disciplinary hearing was held, and on April 10, 2009, Petitioner was found guilty. Petitioner received a 360 day loss of good-time credits.

On September 30, 2009, Petitioner filed a habeas petition challenging the disciplinary action in the Superior Court of California, County of Kings. The petition was denied in a reasoned decision on March 22, 2010. (Answer, Exs. 1, 3.) Petitioner proceeded to file writs of habeas corpus with the California Court of Appeal, Fifth Appellate District, and California Supreme Court. (Answer, Exs. 4-7.) The petitions were summarily denied on August 16, 2010 and October 4, 2010, respectively. (Id.)

Petitioner filed the instant federal habeas petition on November 22, 2010. Petitioner alleged state regulations were violated at his disciplinary hearing and that his federal due process rights were violated under Wolff v. McDonnell, 418 U.S. 539 (1974). On June 3, 2011, Respondent filed a motion to dismiss the petition. (Mot. to Dismiss.) On March 22, 2013, the Court granted the motion to dismiss in part, and dismissed all but Petitioner's second claim in which he alleged he was denied due process as he was not provided a videotape of the incident, despite having requested it. (ECF Nos. 17, 23.)

Respondent filed an answer to the petition on May 31, 2013, addressing the remaining claim, and Petitioner filed a traverse on August 7, 2013. (Answer & Traverse, ECF Nos. 30, 38.)

///

1  II.  **DISCUSSION**

2  A.  **Jurisdiction**

3  Relief by way of a petition for writ of habeas corpus extends to a person in

4  custody pursuant to the judgment of a state court if the custody is in violation of the

5  Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

6  2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

7  suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

8  conviction challenged arises out of the Kings County Superior Court, which is located

9  within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

10  has jurisdiction over the action.

11  B.  **Legal Standard of Review**

12  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

13  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

14  filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

15  114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

16  the AEDPA; thus, it is governed by its provisions.

17  Under AEDPA, an application for a writ of habeas corpus by a person in custody

18  under a judgment of a state court may be granted only for violations of the Constitution

19  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

20  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

21  state court proceedings if the state court's adjudication of the claim:

22
23  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

24
25  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

26  28 U.S.C. § 2254(d).

27  1.  Contrary to or an Unreasonable Application of Federal Law

28  A state court decision is "contrary to" federal law if it "applies a rule that

3

1   contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

2   that are materially indistinguishable from" a Supreme Court case, yet reaches a different

3   result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

4   "AEDPA does not require state and federal courts to wait for some nearly identical

5   factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

6   even a general standard may be applied in an unreasonable manner" Panetti v.

7   Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).   The

8   "clearly established Federal law" requirement "does not demand more than a 'principle'

9   or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

10  decision to be an unreasonable application of clearly established federal law under §

11  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

12  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

13  71 (2003).  A state court decision will involve an "unreasonable application of" federal

14  law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

15  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

16  Court further stresses that "an *unreasonable* application of federal law is different from

17  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

18  U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

19  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

20  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

21  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

22  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

23  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

24  Federal law for a state court to decline to apply a specific legal rule that has not been

25  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

26  (2009), quoted by Richter, 131 S. Ct. at 786.

27          2.      Review of State Decisions

28          "Where there has been one reasoned state judgment rejecting a federal claim,

4

1  later unexplained orders upholding that judgment or rejecting the claim rest on the same

2  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

3  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

4  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

5  unreasonable legal or factual conclusion, "does not require that there be an opinion from

6  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

7  "Where a state court's decision is unaccompanied by an explanation, the habeas

8  petitioner's burden still must be met by showing there was no reasonable basis for the

9  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

10  not require a state court to give reasons before its decision can be deemed to have been

11  'adjudicated on the merits.'").

12        Richter instructs that whether the state court decision is reasoned and explained,

13  or merely a summary denial, the approach to evaluating unreasonableness under §

14  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

15  or theories supported or, as here, could have supported, the state court's decision; then

16  it must ask whether it is possible fairminded jurists could disagree that those arguments

17  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

18  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

19  was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

20  authority to issue the writ in cases where there is no possibility fairminded jurists could

21  disagree that the state court's decision conflicts with this Court's precedents."  Id.  To put

22  it yet another way:

23
24
25
      As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

26  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

27  are the principal forum for asserting constitutional challenges to state convictions." Id. at

28  787. It follows from this consideration that § 2254(d) "complements the exhaustion

1    requirement and the doctrine of procedural bar to ensure that state proceedings are the

2    central process, not just a preliminary step for later federal habeas proceedings." Id.

3    (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

4                    3.      Prejudicial Impact of Constitutional Error

5            The prejudicial impact of any constitutional error is assessed by asking whether

6    the error had "a substantial and injurious effect or influence in determining the jury's

7    verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

8    U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

9    state court recognized the error and reviewed it for harmlessness).  Some constitutional

10   errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

11   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

12   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

13   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

14   Strickland prejudice standard is applied and courts do not engage in a separate analysis

15   applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

16   v. Lamarque, 555 F.3d at 834.

17   **III.    REVIEW OF PETITION**

18           **A.      Inability to Present Videotape Evidence at Disciplinary Hearing**

19           Petitioner's remaining claim is that he requested and was not provided a

20   videotape of the incident. (Pet. at 20.) Petitioner claims that the video would show that

21   Petitioner did not have any type of weapon and was only defending himself. (Id.)

22                    1.      State Court Decision

23           Petitioner presented this claim by way of a petition for writ of habeas corpus to the

24   Kings County Superior Court. The claim was denied in a reasoned decision by the

25   superior court and summarily denied in subsequent petitions by the California Court of

26   Appeal and the California Supreme Court. (See Answer, Exs. 3, 5, 7.) Because the

27   California Court of Appeal and Supreme Court opinion is summary in nature, this Court

28   "looks through" those decisions and presumes they adopted the reasoning of the

superior court, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the Kings County Superior Court explained:

> In regards to Petitioner's exculpatory video claim, it appears undisputed that Petitioner was provided with the opportunity to view the same prior to the hearing. The CDC 115-C states that, "[v]ideotape record of events related to this offense was retained as evidence." That the Senior Hearing Officer did not feel the need to refer to the video evidence in his summary does not mean that the same was not considered. Further, although a prisoner is entitled to due process at a disciplinary hearing, it is not the same level of due process recognized at a criminal trial. (In re Estrada (1996) 47 Cal.App.4th 1688, 1694.) A disciplinary finding requires only "*some*" supporting evidence to satisfy due process concerns. (Superintendent v. Hill (1985) 472 U.S. 445, 455-456, italics added; In re Zepeda (2006) 141 Cal.App.4th 1493, 1498.) In this case, the finding of guilt is supported by; (1) the relevant reports of Correctional Officers Beltran, DeSousa and Jiminez, and (2) the photographic and other evidence considered by the Senior Hearing Officer tending to establish that a weapon was used during the relevant battery.

> IT IS HEREBY ORDERED, the petition is denied.

(Answer, Ex. 3.)

2.    Legal Standard

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State

1  having created the right to good time and itself recognizing that its deprivation is a

2  sanction authorized for major misconduct, the prisoner's interest has real substance.");

3  id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good time credits if

4  they are guilty of serious misconduct, the determination of whether such behavior has

5  occurred becomes critical, and the minimum requirements of procedural due process

6  appropriate for the circumstances must be observed").

7      Prisoners cannot be entirely deprived of their constitutional rights, but their rights

8  may be diminished by the needs and objectives of the institutional environment. Wolff,

9  418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution,

10  so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556.

11  Thus, a prisoner's due process rights are moderated by the "legitimate institutional

12  needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing

13  Superintendent v. Hill, 472 U.S. 445, 454-55 (1984)).

14      When a prison disciplinary proceeding may result in the loss of good time credits,

15  due process requires that the prisoner receive: (1) advance written notice of at least 24

16  hours of the disciplinary charges; (2) an opportunity, when consistent with institutional

17  safety and correctional goals, to call witnesses and present documentary evidence in his

18  defense; and (3) a written statement by the fact finder of the evidence relied on and the

19  reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

20      In addition, due process requires that the decision be supported by "some

21  evidence." Hill, 472 U.S. at 455 (citing United States ex rel. Vajtauer v. Commissioner of

22  Immigration, 273 U.S. 103, 106 (1927)). In Hill, the United States Supreme Court

23  explained that this standard is met if "there was some evidence from which the

24  conclusion of the administrative tribunal could be deduced . . ." Id. "Ascertaining whether

25  this standard is satisfied does not require an examination of the entire record,

26  independent assessment of the credibility of witnesses, or weighing of the evidence."

27  Hill, 472 U.S. at 456. Instead, "the relevant question is whether there is any evidence in

28  the record that could support the conclusion reached by the disciplinary board." Id. at

1  455-56. The Court justified this lesser standard as follows:

2      We decline to adopt a more stringent evidentiary standard as a
       constitutional requirement. Prison disciplinary proceedings take place in a

3      highly charged atmosphere, and prison administrators must often act
       swiftly on the basis of evidence that might be insufficient in less exigent

4      circumstances. The fundamental fairness guaranteed by the Due Process
       Clause does not require the courts to set aside decisions of prison

5      administrators that have some basis in fact. Revocation of good time
       credits is not comparable to a criminal conviction, and neither the amount

6      of evidence necessary to support such a conviction, nor any other
       standard greater than some evidence applies in this context.

7  Id. at 456. (Citations omitted.)

8      "The Federal Constitution does not require evidence that logically precludes any

9  conclusion but the one reached by the disciplinary board." Hill, 472 U.S. at 457. Even

10  where, as in Hill, the evidence in the case "might be characterized as meager," if "the

11  record is not so devoid of evidence that the findings of the disciplinary board were

12  without support or otherwise arbitrary," those findings must be upheld. Id. Thus, if the

13  procedures listed above are afforded to an inmate, and "some evidence" supports the

14  hearing officer's decision, the requirements of due process are satisfied. Hill, 472 U.S. at

15  455; Bostic v. Carlson, 884 F.2d at 1269-1270.

16      Petitioner's remaining claim does not challenge the sufficiency of the evidence

17  used to establish his guilt for battery on an inmate with a weapon. As stated above, the

18  standard for review of disciplinary findings is not stringent and only requires "some

19  evidence." In this case, in finding Petitioner guilty, the hearing officer relied on the

20  testimony and report of several correctional officers and photographic evidence.

21  (Answer, Ex. 2.) Officer Beltran observed Petitioner and Moreno strike each other with

22  closed fists. Upon breaking up the fight, Beltran noticed Moreno was bleeding from his

23  face and the back of his head. (Id.) He also discovered an inmate manufactured weapon

24  at the scene. (Id.) Officer Desousa observed Petitioner and Moreno fighting. (Id.) Officer

25  Jimenez observed Petitioner strike Moreno in his neck and head. (Id.) Finally, the

26  hearing officer relied upon photographs depicting puncture wounds and lacerations to

27  Moreno, photos of the inmate manufactured weapon found at the scene that was 4 1/2

28  inches long and sharped to a point, and photos of blood found on Petitioner's hand. (Id.)

1  Although none of the witnesses observed Petitioner strike Moreno with a weapon, the

2  hearing officer found that due to the injuries found to Moreno and the weapon found on

3  the scene, that it was reasonable to infer that Petitioner committed the act of battery on

4  an inmate with a weapon.

5  The evidence presented at the hearing, and relied upon by the hearing officer,

6  satisfies the some evidence standard. Therefore, the state court reasonably concluded

7  there was some evidence to uphold the decision of the hearing officer.

8  Rather than challenge the sufficiency of the evidence used, Petitioner claims that

9  he was not able to present an exculpatory videotape of the incident.

10  3.  Habeas Relief is not Warranted with Respect to Denial of Evidence

11  Petitioner claims he was denied his right to present videotape evidence at his

12  disciplinary hearing. A prisoner facing disciplinary charges can "present documentary

13  evidence in his defense when permitting him to do so will not be unduly hazardous to

14  institutional safety or correctional goals." Wolff, 418 U.S. at 566. If prison staff in fact

15  denied Petitioner his due process right to present evidence, Petitioner must satisfy the

16  Brecht standard in order to possess a claim for relief.

17  One Magistrate Judge recently summarized harmless error analysis as it applies

18  in the prison disciplinary setting as follows:

19        On a repeated and consistent basis, federal courts hold that in
  prison disciplinary cases, "[e]ven if a prison official's actions create a
20    potential due process violation, a habeas petitioner needs to demonstrate
  that he was harmed by the violation in order to obtain relief." Jordan v.
21    Zych, No. 7:10-cv-491 (W.D.Va.2011) 2011 U.S. Dist. LEXIS 63827, 2011
  WL 2447937 at *4, citing Brown v. Braxton, 373 F.3d 501, 508 (4th Cir.
22    2004). See also Powell v. Coughlin, 953 F.2d 744, 751 (2nd Cir. 1991) ("it
  is entirely inappropriate to overturn the outcome of a prison disciplinary
23    proceeding because of a procedural error without making the normal
  appellate assessment as to whether the error was harmless or
24    prejudicial"); Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (alleged
  due process violation rejected based on harmless error analysis, because
25    prisoner failed to explain how excluded testimony would have aided his
  defense against disciplinary charges); Pilgrim v. Luther, 571 F.3d 201, 206
26    (2nd Cir. 2009) ("a prisoner is entitled to assistance in 'marshaling
  evidence and presenting a defense,' " but "any violations of this qualified
27    right are reviewed for 'harmless error' "); Grossman v. Bruce, 447 F.3d
  801, 805 (10th Cir. 2006) ("errors made by prison officials in denying
28    witness testimony at official hearings are subject to harmless error

review").

Adams v. Federal Bureau of Prisons, 2011 U.S. Dist. LEXIS 153228, 2011 WL 7293381, *3 (D.Minn., Dec. 6, 2011); Nielsen v. Graber, 2012 U.S. Dist. LEXIS 60528, 13-15 (D. Ariz. Mar. 7, 2012).

According to the disciplinary hearing report, Petitioner was able to view the videotape on February 17, 2006 and on March 11, 2009. (Answer, Ex. 2.) Although Petitioner viewed the videotape twice before the disciplinary hearing, Petitioner did not make any argument or attempt to present any evidence, including the videotape, at the hearing. (Id.), Petitioner was provided the evidence in question, and provided the opportunity at the hearing to either present the evidence or argue that the videotape would contradict the testimony and reports of the witnesses. Petitioner was provided sufficient due process under Wolff, and his claim should be denied. See Keel v. Dovey, 459 F. Supp. 2d 946, 958 (C.D. Cal. 2006) ("The Court does not find that Plaintiff was denied due process on the basis that she was not permitted to listen and read the intercepted communications for herself. She was provided with written notice of the evidence to be relied on in the disciplinary hearing. Moreover, such notice was detailed and explained the manner in which Plaintiff came to the attention of prison authorities. The notice provided Plaintiff with ample opportunity to defend against the charges and, thereby, satisfied due process.")

Yet, assuming that Petitioner did request and was denied such evidence, the error was harmless. Evidence weighed by the hearing officer included several correctional officers' reports and testimony observing Petitioner strike Moreno, injuries on Moreno consistent with his having been attacked with a weapon, a weapon found at the scene of the confrontation, and blood on Petitioner's hand. The hearing officer found staff reports that the evidence was consistent with Petitioner committing the act of battery on an inmate with a weapon.

While Petitioner asserts that the videotape contained favorable evidence, according to the report of an investigating officer, the videotape confirmed the testimony

1  of the witnessing correctional officers. The report states that another inmate Guerra

2  engaged Moreno before Petitioner. (Answer, Ex. 6 at 42.) Guerra struck Moreno once

3  and then walked away as Petitioner continued to strike Moreno about the head and face.

4  (Id.) The videotape depicted only four inmates on the yard, Petitioner, Guerra, and

5  Moreno, and an unidentified African-American inmate in a wheelchair who was not near

6  nor involved in the incident. (Id.); see Alexander v. Schleder, 790 F. Supp. 2d 1179,

7  1187 (E.D. Cal. 2011) (finding it "reasonable for the [hearing officer] to have relied on

8  [the correctional officer's] statement regarding his summary of the contents of the

9  videotape evidence" in denying a due process claim under Wolff.). It is likely that the

10  videotape would only corroborate the testimony of the witnesses, and not be of any

11  benefit to Petitioner.

12  Petitioner has not shown that the outcome of the disciplinary proceedings would

13  have been different if he had been afforded an opportunity to present the videotape

14  evidence. The evidence against Petitioner was quite strong, and the videotape would not

15  have influenced the decision of the hearing officer in finding him guilty of the charged

16  offense. Thus, even if procedural errors did occur during the disciplinary proceeding,

17  Petitioner has offered no reason to believe that any such errors affected the outcome of

18  the proceeding. For this additional reason, Petitioner cannot be granted a writ of habeas

19  corpus based on his current due process claim.

20  **IV.    RECOMMENDATION**

21  Accordingly, it is hereby recommended that the petition for writ of habeas corpus

22  be DENIED with prejudice.

23  This Findings and Recommendation is submitted to the assigned District Judge,

24  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

25  being served with the Findings and Recommendation, any party may file written

26  objections with the Court and serve a copy on all parties. Such a document should be

27  captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

28  to the objections shall be served and filed within fourteen (14) days after service of the

1   objections. The parties are advised that failure to file objections within the specified time

2   may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153

3   (9th Cir. 1991).

4

5

6

7

8

  IT IS SO ORDERED.

9

10      Dated:    <u>August 27, 2013</u>          <u>/s/ *Michael J. Seng*</u>

11                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28